UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR CANSECO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>M.E. SPEARMAN, Warden, et al.,<br><br>　　　　　Defendants. | No. 2:17-cv-1133 DB P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. Plaintiff alleges violations of his First Amendment and Equal Protection rights and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

**I.      Application to Proceed In Forma Pauperis**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments

1

of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

**II.     Screening Requirement**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**III.    Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

////

**IV.    Plaintiff's Allegations**

At all times relevant to this action, plaintiff was a state inmate housed at High Desert State Prison ("HDSP") in Susanville, California. He names the following individuals as defendants: HDSP Warden M.E. Spearman, HDSP Chief Deputy Warden T. Foss, HDSP Associate Warden H. Angela, and Does 1-100. They are sued in their official and individual capacities. Plaintiff brings suit for violations of his First Amendment and Equal Protection rights and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

Plaintiff's allegations may be fairly summarized as follows:

Though not explicit, the court assumes that plaintiff is a Muslim inmate. On April 4, 2016, plaintiff formally complained in a CDCR 602 inmate grievance on behalf of himself and other inmates of a HDSP policy that prevented "Close A" inmates[1] from attending evening religious activities in the dining hall as required by the Islamic faith. This complaint was made in anticipation of upcoming religious observances during the holy month of Ramadan: the month of fasting with evening meals and the Eid ul Fitr post-Ramadan feast. Through the grievance, plaintiff sought permission for Close A inmates to be allowed in the dining hall until 2000 hours and for a memo issued to the correctional staff to permit Close A inmates in the dining hall.

The group grievance was submitted in April 2016 and assigned Log No. HDSO-B-16-01216. It was denied at the first level of review by defendant Associate Warden Angela on May 2, 2016, on the ground that, pursuant to institutional regulations in effect at the time, Close A

---

[1] Pursuant to California Code of Regulations, tit. 15 § 3377.1(a), the California Department of Corrections and Rehabilitation uses custody designations to establish where an inmate shall be housed and assigned, and the level of staff supervision required to ensure institutional security and public safety. At the time of plaintiff's grievance, § 3377.1(a) encompassed seven classifications, including "Close A Custody" and "Close B Custody." Id. (West 2014). Close A Custody inmates were allowed to participate in program assignments and activities within the hours of 0600 hours to 1800 hours unless the hours were extended by the warden to 2000 hours. Id. § 3377.1(a)(2)(B) (West 2014). Close B Custody inmates, on the other hand, were allowed program access between the hours of 0600 hours and 2000 hours, and sometimes even 2200 hours, within certain areas. Id. § 3377.1(a)(4)(B). In August 2017, § 3377.1 was modified to encompass only six inmate classifications. Relevant here, the Close A Custody and Close B Custody inmates were consolidated and identified only as "Close Custody" inmates with the same opportunities as those previously provided to the Close B Custody inmates. See § 3377.1(a)(2)(B) (West 2017).

Custody inmates are allowed program activities and assignments between the hours of 0600 and 1800 hours, unless extended by the warden to no later than 2000 hours. Since there was no mandate for the extension, the appeal was denied

The grievance was subsequently denied at the second level of review by defendant Chief Deputy Warden Foss on June 4, 2016, on the same grounds as denied by defendant Angela.

On September 8, 2016, the appeal was denied at the Director's level of review with citation to California Code of Regulations, tit. 15 § 3270, which provides that the primary objectives of correctional institutions is to protect the public, afford institutionalized persons with reasonable opportunity and encouragement to participate in rehabilitative activities, and to ensure the safety and security of the institution. Per this regulation, "The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institutions of the department."

During the processing of the group grievance, plaintiff claims he was unable to attend the July 22, 2016, Eid ul Fitr post-Ramadan feast in the dining hall following the month of fasting.

Plaintiff seeks declaratory and injunctive relief and damages.

**V.      Discussion**

   **A.      Eleventh Amendment**

Plaintiff has sued each defendant in his or her official capacity. "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Unless waived, the Eleventh Amendment bars a federal court award of damages under § 1983 against a state, state agency, or state official sued in an official capacity. Quern v. Jordan, 440 U.S. 332, 342 (1979). Moreover, neither a state nor a state official sued in an official capacity for monetary damages is a "person" for purposes of a § 1983 damages action. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Therefore, even if a state waives its Eleventh Amendment immunity in federal court, Will precludes a damages action against the state government entity or a state official sued in an official capacity for monetary damages. Id. For these reasons, plaintiff's claims for damages against defendants in their official capacity should be dismissed.

**B.     Linkage**

As for plaintiff's individual capacity claims, under § 1983 plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 695 (1978).

Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Monell, 436 U.S. at 691. Since a government official cannot be held liable under a theory of vicarious liability in § 1983 actions, plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions by linking each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights. Iqbal, 556 U.S. at 676.

Liability may be imposed on supervisory defendants under § 1983 only if the supervisor: (1) personally participated in the deprivation of constitutional rights or directed the violations or (2) knew of the violations and failed to act to prevent them. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Defendants cannot be held liable for being generally deficient in their supervisory duties.

Plaintiff's complaint seeks to impose liability on defendant Warden Spearman solely for failing to properly train defendants Foss and Angela. See Compl. ¶¶ 5, 23. He asserts no allegations specifically linking this defendant to the alleged denial of his constitutional rights, and he further fails to include any allegations that there exists a CDCR policy or custom depriving Muslim inmates of participating in religious services. Accordingly, plaintiff's claim against this defendant fails.

**C.     Doe Defendants**

Plaintiff has named 100 Doe defendants but is hereby advised that the court cannot order service of a Doe defendant because the United States Marshal cannot serve a Doe Defendant. Therefore, to the extent plaintiff states a claim against any Doe defendant, he will be required to identify him or her with enough information to locate the defendant for service of process. The

United States Marshal cannot initiate service of process on unknown defendants. Plaintiff will be given an opportunity through discovery to identify the unknown (Doe) defendants. <u>Crowley v. Bannister</u>, 734 F.3d 967, 978 (9th Cir. 2013) (quoting <u>Gillespie v. Civiletti</u>, 629 E.2d 637, 642 (9th Cir. 1980)). Once the identity of a Doe defendant is ascertained, plaintiff must file a motion to amend his complaint only to identify the identified Doe defendant so that service by the United States Marshal can be attempted. Therefore, the court will send plaintiff the appropriate service documents at such time that plaintiff ascertains the identities of the Doe defendants. However, if plaintiff fails to identify any Doe defendant during the course of the discovery, any Doe Defendant will be dismissed from this action.

### D.  **Inmate Appeal Process**

Plaintiff names defendants Foss and Angela based on their role in the processing of plaintiff's inmate grievance. There is however no constitutional requirement regarding how a grievance system is operated. <u>See</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003). Thus, any deficiencies in defendants' responses to plaintiff's grievance do not state a claim cognizable in a federal civil rights action. <u>See id.</u> at 860 (stating that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure"); <u>Mann v. Adams</u>, 855 F.2d 639, 64 (9th Cir. 1988). Thus, plaintiff may not impose liability on a defendant simply because he or she played a role in processing plaintiff's inmate appeals or grievances.

### E.  **First Amendment Free Exercise of Religion**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend I. The Ninth Circuit summarizes the application of the Free Exercise Clause in a state prison context as follows:

> The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, <u>Everson v. Bd. of Educ. of Ewing Twp.</u>, 330 U.S. 1, 8 (1947), "prohibits government from making a law 'prohibiting the free exercise [of religion].'" <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972) (per curiam) (alteration in original). The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. <u>See, e.g.</u>, <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987); <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974); <u>Cruz</u>, 405 U.S. at 322. A prisoner's right to freely

> exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration. O'Lone, 482 U.S. at 348.

Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013).

"To prevail on their Free Exercise claim, Plaintiffs must allege facts plausibly showing that the government denied them 'a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Id. (citing Cruz, 405 U.S. at 322, 92 S.Ct. 1079). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see Shakur, 514 F.3d 884-85 (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in Malik determines whether the Free Exercise Clause applies). If the inmate makes his initial showing of a sincerely held religious belief, he must establish that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith. Shakur, 514 F.3d at 884–85.

Government action substantially burdens the exercise of religion when the action is "oppressive to a significantly great extent." Int'l Church of Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1067 (9th Cir. 2011) (internal quotations and citation omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." Id. (quoting San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (citing Guru Nanak, 456 F.3d at 988).

Plaintiff's First Amendment claim is premised on the defendants' alleged failure to allow him to participate in evening religious services in the dining hall during the month of Ramadan and the defendants' alleged "failure to adequately supervise the correctional staff subordinate to them." Compl. ¶¶ 25-26. The latter claim is far too vague and speculative to state a claim. As for the former claim, plaintiff does not allege that he was denied the opportunity to fast during the month of Ramadan or to break his fast in the evenings. Instead, he asserts that his inability as a

Close A Custody inmate to participate in group activities substantially interfered with his religious rights. Assuming this claim to be sufficient, it is not properly asserted against any defendant since none were personally involved in the alleged deprivation of plaintiff's rights. As previously noted, plaintiff presents no facts suggesting Warden Spearman's involvement, and the only involvement of the remaining defendants is limited to their processing of plaintiff's appeal, which cannot serve as the basis of liability.

To the extent plaintiff seeks to proceed against any of the defendants in their official capacities for injunctive relief, this request is mooted in light of the regulatory changes to California Code of Regulations, tit. 15, § 3371(a), which discards any distinction between Close A and Close B Custody inmates, and provides all Close Custody inmates access to program and activities between the hours of 0600 and 2000 hours. Voluntary cessation of challenged conduct renders a claim moot if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (citations omitted). A defendant's voluntary change in policy renders a claim moot if it is "'a permanent change' in the way it [does] business and [is] not a 'temporary policy that the agency will refute once this litigation has concluded.'" Smith v. Univ. of Wash., Law Sch., 233 F.3d 1188, 1194 (9th Cir. 2000) (quoting White v. Lee, 227 F.3d 1214, 1243 (9th Cir. 2000)). Since the regulation at issue was permanently changed in 2017, plaintiff's request for injunctive relief is mooted.

Accordingly, plaintiff's First Amendment free exercise claim must be dismissed.

**F.     Equal Protection**

The Equal Protection Clause requires persons who are similarly situated to be treated alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing prison officials intentionally discriminated against a plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702–03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of L.A., 250 F.3d

8

668, 686 (9th Cir. 2001), or similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Or. Dep't of Agric., 553 U.S. 591, 601-02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008).

Here, plaintiff has presented no facts from which the court could infer intentional discrimination. He has not alleged membership in a protected class, and the alleged failure to provide him an opportunity to participate in a group religious meal in the dining hall does not show that plaintiff was intentionally treated differently than similarly situated persons without a rational relationship to a legitimate state purpose. While plaintiff does distinguish himself from inmates of "[a]ll other faiths" who are allegedly provided banquets and access to facilities, this distinction is unrelated to the gravamen of his claim, which is that, as a member of Class A Custody inmates, he could not participate in group religious activities after 1800 hours. Plaintiff has thus failed to state an Equal Protection claim upon which relief may be granted.

### G. RLUIPA

Lastly, plaintiff claims defendants' actions violated the RLUIPA. Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, unless the burden furthers a compelling governmental interest, and does so by the least restrictive means." Cutter v. Wilkinson, 544 U.S. 709, 712 (2005) (internal punctuation omitted) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)). Religious exercise includes "any exercise of religion, whether or not compelled by or central to, a system of religious belief." Cutter, 544 U.S. at 715 (quoting 42 U.S.C. § 2000cc-5(7)(A)). In enacting RLUIPA, Congress replaced the "legitimate penological interest" standard with the "'compelling governmental interest' and 'least restrictive means' tests codified at 42 U.S.C. § 2000cc–1(a)." Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005).

Section 3 applies to state run institutions such as prisons. Cutter, 544 U.S. at 722 (citing 42 U.S.C. § 2000cc-1(a)). RLUIPA does not elevate accommodation of religion over an institution's need to maintain order and safety. Cutter, 544 U.S. at 723. In enacting RLUIPA, the legislature expected courts to apply the standards of RLUIPA with "due deference to the

experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. 709, 723 (2005) (citations omitted).

In determining whether government action is lawful under RLUIPA the court must consider: 1) whether plaintiff has shown that his exercise of religion is at issue; 2) whether plaintiff is asserting a sincerely held religious belief; 3) whether the state's conduct substantially burdens plaintiff's religious exercise; and 4) if so, was the action taken in furtherance of a compelling government interest and was narrowly tailored to that interest. Rouser v. White, 630 F. Supp. 2d 1165, 1181-86 (E.D. Cal. 2009).

In order to state a claim for violation of RLUIPA, a plaintiff must demonstrate that the defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). The Ninth Circuit defines "substantial burden" to mean "oppressive to a significantly great extent, such that it renders religious exercise effectively impracticable." Sefeldeen, 239 F. App'x at 206 (quoting San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034-35 (9th Cir. 2004) (internal quotations omitted). If plaintiff meets his initial burden, defendant must then prove that any substantial burden on plaintiff's religious exercise is both "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b).

In Paragraph 46 of the complaint, plaintiff seeks damages and injunctive relief as a result of the defendants' alleged violations of RLUIPA. Insofar as plaintiff seeks damages, he is barred from doing so because RLUIPA does not authorize suits against state actors, including prison officials, acting in their individual capacity. See Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014) (agreeing with other circuits addressing this issue). Claims may only be brought against such defendants in their official or governmental capacity. Id. However, the availability of money damages from state officials sued in their official capacity turns on whether the State has waived its Eleventh Amendment immunity from such suits, or congress has abrogated that immunity under its power to enforce the Fourteenth Amendment. See Holley v. Cal. Dep't of

Corr., 599 F.3d 1108, 1112 (9th Cir. 2010). The Ninth Circuit has held that California has not waived, and Congress has not abrogated, state immunity with respect to monetary damages claims under RLUIPA. Id. at 1112-14. Consequently, RLUIPA does not authorize money damages against state officials, whether sued in their official or individual capacities. See Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015). Thus, plaintiff's RLUIPA claim for money damages must be dismissed.

As for any request for injunctive relief, the court finds that plaintiff's RLUIPA claim is now moot. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Williams v. Alioto, 549 F.2d 136, 140-41 (9th Cir. 1977). Courts have found claims under RLUIPA to be moot where the inmate is no longer subject to the alleged conditions because he has been transferred to another institution, Dearwester v. Sacramento Cty. Sheriff's Dep't, No. 2:13-CV-2066 MCE DAD, 2015 WL 4496400, at *2 (E.D. Cal. July 23, 2015), report and recommendation adopted, No. 2:13-CV-02066-MCE, 2015 WL 5147568 (E.D. Cal. Sept. 1, 2015); Bush v. Donovan, No. 12CV2573 GPC NLS, 2014 WL 1028468, at *5 (S.D. Cal. Mar. 17, 2014); released from custody, Alvarez v. Hill, 667 F.3d 1061, 1064 (9th Cir. 2012); Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015); the policy creating the substantial burden on the religious exercised has been changed, Rognirhar v. Foston, No. CV-08-892-LRS, 2013 WL 4494475, at *2 (E.D. Cal. Aug. 19, 2013); or the relief requested in the claim has been received, Patterson v. Ryan, No. CV 05-1159-PHX-RCB, 2011 WL 3799099, at *7 (D. Ariz. Aug. 26, 2011), aff'd sub nom. Patterson v. Moore, 591 F.App'x 622 (9th Cir. 2015); Boyd v. Carney, No. C11-5782 BHS/KLS, 2012 WL 4903386, at *8 (W.D. Wash. Aug. 1, 2012), report and recommendation adopted, No. C11-5782BHS, 2012 WL 4896935 (W.D. Wash. Oct. 15, 2012); Von Staich v. Hamlet, No. 04-16011, 2007 WL 3001726, at *2 (9th Cir. Oct. 16, 2007) (unpublished) (under RLUIPA a claim for injunctive relief is moot when the plaintiff has received the relief requested in the complaint).

Plaintiff's claim in this action is that he was denied the opportunity to participate in evening meals in the dining hall as late as 2000 hours during the month of Ramadan in 2016. As noted supra, though, the relevant regulations were changed in 2017 to allow all Close Custody

11

inmates the opportunity to participate in program assignments and activities scheduled within the hours of 0600 hours and 2000 hours. See Cal. Code Regs., tit. 15 § 3377.1(a)(2)(B) (West 2017). Plaintiff's requested injunctive relief appears to have now been mooted in light of these regulatory changes, and there is no suggestion that the new regulations would violate plaintiff's rights. A case can be mooted by the voluntary cessation of conduct where there is no reasonable expectation that the violation will recur and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Smith v. Univ. of Washington, Law Sch., 233 F.3d 1188, 1194 (9th Cir. 2000). Accordingly, this claim must also be dismissed.

## VI. Conclusion

Plaintiff's complaint does not state a cognizable claim for relief. The court will grant plaintiff an opportunity to file an amended complaint to cure noted defects. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, plaintiff may forego amendment and notify the court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). The undersigned then will issue findings and recommendations to dismiss the complaint with leave to amend, plaintiff will have an opportunity to object, and the matter will be decided by a District Judge.

If plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named defendant personally participated in a deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

////

1      Finally, plaintiff is advised that Local Rule 220 requires that an amended complaint be
complete in itself without reference to any prior pleading. As a general rule, an amended
complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).
Once an amended complaint is filed, the original complaint no longer serves any function in the
case. Therefore, in an amended complaint, as in an original complaint, each claim and the
involvement of each defendant must be sufficiently alleged. The amended complaint should be
clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be
an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R.
Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a
right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

    Accordingly, it is HEREBY ORDERED that:

    1.   Plaintiff's request for leave to proceed in forma pauperis (ECF Nos. 3, 6) is granted.

    2.   Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

    3.   The Clerk's Office shall send plaintiff a blank civil rights complaint form and a copy of his complaint, filed May 30, 2017;

    4.   Within thirty (30) days from the date of this order, plaintiff must file either (a) a first amended complaint curing the deficiencies identified by the court in this order, (b) a notice of voluntary dismissal, or (c) a notice of election to stand on the complaint; and

////
////
////
////
////

5. If plaintiff fails to comply with this order, the court will recommend the action be dismissed, with prejudice, for failure to obey a court order and failure to state a claim, subject to the "three strikes" provision set forth in in 28 U.S.C. § 1915(g).

Dated: January 9, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/cans1113.scrn